[Civ. No. 18.  Fourth Appellate District.—October 31, 1929.]

EDITH CHASE, Respondent, v. SUNSET MUTUAL LIFE ASSOCIATION (a Corporation), Appellant.

Leroy B. Lorenz for Appellant.

James V. Brewer and Paul M. Wikoff for Respondent.

SLOANE, P. J.—This is an appeal by the defendant Sunset Mutual Life Association from a judgment for $1400, with interest and costs, on a mutual benefit life insurance policy. The insurance was taken out by one Henry Niel Chase, upon an application in writing made by him on the fifth day of April, 1927. The policy bears date of April 11, 1927. The insured had an attack of illness on April 7th, and on account of a recurring attack on April 11th was taken to a hospital on the 14th of that month, and underwent an operation on April 16th, and died on April 22, 1927.

In the application for insurance of April 5th, upon which the defendant company issued the policy sued on, the applicant certified that he was in good health, and as far as he knew he had no disease or other condition that would prevent him from obtaining life insurance, and that he understood that the falsity of any statement as to his physical condition would bar the right to recovery on his policy. His wife, the plaintiff in this action, was named as beneficiary in the policy issued.

The issue on which the case was tried is raised by the allegation in defendant's answer that the policy was executed in reliance on decedent's representations as to the state of his health contained in his application for insurance, and that he therein "fraudulently stated that he was in good health, knowing at the time that this statement was false, with the intent to deceive and defraud the defendant; that the said Henry Niel Chase was not at the time in good health, but was suffering, and had suffered prior to his statement made on the 5th day of April, 1927, for a considerable length of time; that said suffering was caused by a diseased gall bladder, from which he died on the 22nd day of April, 1927; that the deceased fraudulently stated in

said application that he had not consulted a doctor during the last 3 years prior to the signing of said application for membership, and that said statement was false, and that said Henry Niel Chase intended to deceive, and did deceive the defendant by said statement.''

Before the conclusion of the trial the defendant, by leave of court, filed an amendment to its answer, in which it is alleged that ''after the making of the application by the insured, to wit, after April 5, 1927, and before the execution of said policy, i. e., before April 11, 1927, the insured became seriously ill, that he was sick; that he had an attack; that he was not in good health, that he was thereafter physically able to communicate the fact of such ill health to the defendant insurer before the date of the execution of said policy of life insurance; that the said insured knew that the insurer would not have issued the said policy herein sued upon, if the facts were brought to the attention of said insurer; that the insured fraudulently concealed the said facts from the defendant insurer for the purpose of defrauding this defendant; that if such facts as to the insured's illness during the said period were made known to this defendant that this defendant would not have issued said policy of life insurance.''

The case was tried on the issue so presented, and the trial court found for the plaintiff and against the defendant as to any fraud or intentional deceit or misrepresentation on the part of the insured.

While the insured understood, and it is recited in the policy that ''false statement of any material fact covered in the signed application for membership shall void this policy and limit the amount payable thereunder to the total amount paid by said member on this membership,'' there is nothing in the policy giving him notice that he was required to inform the insurance company of any attack of illness he might have in the interim between the submitting of his application and the issuance of the policy; and there is nothing in the pleadings to indicate that his attention was at any time called to the necessity of any such action on his part to validate his insurance. He had signed the statements of his application, paid into the company the amount of the premium called for and performed all of the conditions prerequisite to the issuance to him of his policy of

insurance, and doubtless assumed, as people usually do, that from that date on his life was insured.

It may be conceded, however, under the authorities cited that if he was aware, subsequent to the date of his application and representations as to his physical condition, and before the issuance of the policy, that he was afflicted with a serious disease, it was his duty to so inform the insurance company. Indeed, it may be conceded that if prior to the date of the issuance of this policy Mr. Chase was aware or seriously apprehended that he was suffering from any disease that was likely to seriously impair his health, his beneficiary would not be entitled to recover in this action. The material and controlling findings of the trial court in this case are those in which it is found that the insured was not in possession of knowledge as to his condition such as would lead him to apprehend that his life or his health was seriously endangered. The evidence in the record is such as to justify the conclusion that up to and including the time he made application for life insurance he considered himself a hale, hearty man. His occupation was the strenuous one of a cement worker, and his wife testified that up to the attack of illness which occurred April 7, 1927, in the several years she had been married to him, he had never been sick or had a doctor, or complained of any pain or illness. The court was justified in finding that on the fifth day of April he considered himself a well man. The only thing that occurred between that date and the 11th of April, the date of the issuance of the policy, to warn him of a different condition was a sudden attack of illness on the night of the 7th, from which he appears to have speedily recovered, as a day or two later he visited his wife, who was temporarily in another town with relatives. At that time his only reference to this attack seems to have been called out by some conversation relating to the taking out of insurance by some acquaintance. His wife testifies that he jokingly referred to the fact that he had taken out an insurance policy and that he was pretty sick a night or two afterward and he did not know but that she would have occasion to enjoy his insurance money earlier than he had anticipated. There was nothing in the conversation to indicate that he had taken the matter seriously, or that he was still suffering from the

effects of the attack. It was not until after the 11th of April that there was a recurrence of his trouble, and he received information that it would probably be necessary for him to go to the hospital for an operation. His actual condition was determined through the operation itself on the 16th of April, when it developed that he was suffering from a gall stone impacted in the passage from the kidneys to the bladder. How long this trouble had been progressing does not appear. The medical evidence is to the effect that he might not have been conscious of any severe pain from this source until the gall stone passed from the kidney to the passage. The death certificate recites that the cause of death was "myocarditis post operative paralytis illem impacted stone in ureter." As nearly as we can make out, this means in layman's English that he had a gall stone impacted in the passage from the kidneys to the bladder, accompanied by a condition of the heart which indicated a weakening or breaking down of the muscle cells, and that these conditions, including the operation for removal of the gall stone, caused the death of the insured.

It appears that the heart affection might have existed for some period without the patient being aware of any serious condition. It seems unlikely from the testimony of the doctors that there could have been any movement of the gall stone between the kidneys and the bladder without severe pain. The patient did have severe pain on the 7th of April, but there is no evidence that he had ever had it before, or that he knew what caused it. For all the evidence discloses, it may have been attributed to an attack of colic or indigestion. There is doubtless some point of time when these gall stones begin their painful passage from the kidney to the bladder, and it does not appear how far this stone had progressed before it became impacted.

So far as the indication of heart trouble is here involved, it appears from the testimony of Dr. Savage, the surgeon who performed the operation, that he himself did not suspect its existence until three or four days after the operation. He says:

"I began to suspect it from the very poor way his heart was acting.

"Q. Then you would not hardly believe that this man had known that himself would you? A. My honest opinion is

that he probably knew nothing of it. That is only an opinion; I don't know; I never saw him before I operated on him."

This doctor also testified that excepting the process of movement of gall stones, the disturbance might be very indefinite, probably indicating a digestive disturbance. With the exception of the single attack of April 7th, it does not appear that the patient was subject to any degree of suffering that would indicate a serious condition, until he was taken to the hospital, after which the record discloses that he was in a very serious condition, and suffered almost continuous attacks of renal colic.

While the unlikelihood of a patient in the condition the insured was in at the time of the operation, having reached that stage of the disease without becoming aware of some serious ailment, is apparent, it is purely a matter of inference, as there is no direct evidence to support appellant's contention that the insured knowingly misrepresented his condition, or that the insurance company was misled by any conscious or intentional concealment on his part. On the other hand, the circumstances presented to the court are such as make it entirely possible, if not probable, that the deceased, up to the time he went to the hospital, was unaware of his condition. The burden of proof in this particular was upon the appellant, and on the strength of conflicting evidence and inferences, the court found in favor of the insured. We think there was reasonable basis for such finding, and without going further into the details of the evidence are of the opinion that the findings in this essential particular are supported by the evidence.

This is the only important point in the case.

■ Appellant specifies finding No. X as unsupported by the evidence. The court there finds that it is not true that the defendant would never have entered into the insurance contract with the said decedent except for the statements made by the said decedent; that it is not true that defendant relied on the statements of said decedent. We doubt if this finding is supported by the evidence, but it is not material to the decision of the case. Assuming, as is doubtless the fact, that the defendant company did rely upon the representations of the insured in his application, and would not have entered into the contract of insur-

ance if such representations had not been made, yet if, as the court has found, such representations were honestly made, and were justified by the decedent's then knowledge of his physical condition, the mere fact that the representations of the insured were proved to be unfounded by subsequent events, in the absence of fraud or deceit, would not void the policy.

As a further ground of error, appellant relies on his demurrer to the complaint, for want of facts sufficient to constitute a cause of action, for the reason that the complaint fails to expressly allege that the insured was in good standing in the association at the time of his death. The third paragraph of the policy provides that the right of the beneficiary to collect the insurance is predicated on the condition that the member is in good standing at the time of death. We think this specification of error is not deserving of much consideration. The facts of the case as set out in the complaint show that the conditions of the contract had been met by the insured by the payment of all dues provided for in the policy, up until the time of death, and no other liability is shown under the policy which could have changed his status within the few days that elapsed from the application for insurance and the death of the insured. If anything of that kind occurred, we think it would have been incumbent upon the appellant to have pleaded it by way of defense.

Appellant's counsel also took exception to the denial of his application to reopen the case to take the testimony of one Dr. Wiley, who was the physician attendant upon the insured just prior to his being taken to the hospital. This application was made on affidavit and notice of motion, several days after the conclusion of the trial. Dr. Wiley was present in court during the trial, on behalf of the plaintiff, but was not called to the witness-stand. Counsel for appellant alleges that his failure to use Dr. Wiley as a witness was because he relied upon some statement of plaintiff's counsel that he intended to call him, and counsel for appellant expected to be able to cross-examine him. However, there seems no good reason why at or before the submission of the case, when it became apparent that plaintiff was not going to use the witness, he should not have been brought into court on behalf of defendant.

Furthermore, appellant, in his affidavit, fails to state what facts, if any, in his behalf, he expected to prove by this witness, or whether his testimony would be material to appellant's case. On the contrary, the affidavit indicates that the doctor would have testified, if called to the stand, in support of plaintiff's case.

For the reasons hereinbefore stated the judgment is affirmed.

Barnard, J., and Marks, J., concurred.