[Civ. No. 5018. Fourth Dist. Jan. 7, 1955.]

STANDARD ACCIDENT INSURANCE COMPANY (a Corporation), Plaintiff and Respondent, v. DAVID S. PRATT, Defendant and Respondent; SOPHIE NEWMAN, Intervener and Appellant.

James E. Walker for Intervener and Appellant.

Bauder, Gilbert, Thompson & Kelly for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

MUSSELL, J.—Sophie Newman, intervener in an action for declaratory relief brought by Standard Accident Insurance Company, a corporation, appeals from a judgment decreeing, among other things, that a certain*policy of liability insurance issued by said company was rescinded as of the date of its issuance and that the company was not obligated to pay any judgment against the insured or defend the insured in an action brought against him by Sophie Newman for injuries sustained in an automobile accident.

It is alleged in the complaint that on June 12, 1951, David S. Pratt applied for an insurance policy to insure his 1951 Ford automobile; that he stated in his application he had a valid California operator's license and no physical impairments; that in reliance upon the statements and representations included in said application, plaintiff issued its policy insuring Pratt in the sum of $10,000; that on August 4, 1951, Pratt, while driving said vehicle, was involved in an automobile accident wherein Sophie Newman received injuries; that thereafter plaintiff ascertained that Pratt did not have a valid California operator's license, that he had faulty vision when he made his application for insurance and that he knew of said condition; that if plaintiff had known that Pratt had no valid California operator's license or that he had faulty vision, it would not have issued the policy; that on October 10, 1951, plaintiff rescinded the policy and returned the premium in the sum of $72 to Pratt; that on February 19, 1952, Pratt notified plaintiff that Sophie Newman had instituted suit against him arising out of the accident of August 4, 1951, and demanded that plaintiff defend the action; that this demand was declined by plaintiff.

Pratt's answer consists principally of denials of the allegations of the complaint, together with an affirmative defense that when he accepted the return of the $72 premium he acted under a mistake of fact and that plaintiff should be estopped to assert its cancellation because plaintiff could have readily ascertained that Pratt did not have a valid operator's license and had a physical impairment before it issued the policy.

Sophie Newman was granted leave to intervene in the action and in her complaint in intervention alleged that she is plaintiff in an action against Pratt arising out of a collision of his automobile with intervener while she was crossing a pedestrian crosswalk; that she was injured in said accident and that her injuries were caused by the carelessness and negligence of Pratt; that on or about August 6, 1951, an agent

and adjuster for the insurance company stated to her that the company would admit liability and all that remained to be settled was the amount of damages; that relying on these statements she withheld bringing suit; that the company did not disclaim responsibility for her injuries or the conduct of Pratt until December 21, 1951; that for a long time prior to August 4, 1951, the insurance company fully knew and understood Pratt's physical condition and negligently and carelessly failed to take proper precautions against the insurance of a hazardous risk and failed to investigate Pratt's physical condition and the status of his operator's license. The complaint concluded with allegations adopting those in Pratt's answer and alleging his insolvency. The prayer was that the court deny the relief sought in plaintiff insurance company's complaint and declare that the insurance policy was in full force and effect at the time of the accident and that the company has a liability to pay intervener any judgment that may be rendered in her behalf in her action against Pratt.

There is no dispute as to most of the facts. Pratt purchased the Ford automobile in the spring of 1951. He did not have a California operator's license and did not apply for one because "He wasn't sure that he could pass the eye test or that he could get a license." He testified that he obtained a temporary permit from one Victor J. Papenek for the sum of $25; that this license was not a valid California driver's license; that he knew "That it was gotten in a slightly irregular way"; and that he received the license from Papenek two or three weeks before the accident of August 4, 1951. On June 12, 1951, Pratt applied for insurance on his automobile at the office of the Automobile Club of Southern California in Santa Ana. The application which he signed contained two printed questions which are here involved: (1) Has applicant a valid California operator's license; and (2) Has applicant any physical impairments? Pratt answered the first question "Yes" and the second question "No." These statements were signed by Pratt and were designated as warranties in the application in the following language: "WARRANTIES—The following are statements of facts known to and warranted by the applicant to be true." The application was accepted by the Inter-insurance Exchange of the Automobile Club of Southern California and the policy of insurance here involved was issued by the plaintiff Standard Accident Insurance Company on June 12, 1951. The policy

contains no reference to the application or to the representations made therein by Pratt. Attached to the face of the policy is a statement designated "DECLARATIONS," which likewise contains no reference to the application and relates to matters which are not in dispute. Paragraph 18 of the conditions of the insuring agreements of the policy reads as follows: "18. DECLARATIONS . . . By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

There is a conflict in the evidence as to whether Pratt had any "physical impairments" as those words are used in the policy and understood by the parties. The trial court found in this connection that "David S. Pratt had a physical impairment, to wit, faulty vision, and at all times herein mentioned had faulty vision, a condition known to him at the time he made said application for automobile liability insurance contract." This finding is supported by substantial evidence and cannot be disturbed on appeal. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) The trial court further found that at the time he made application for said automobile insurance contract defendant David S. Pratt "Did not have nor possess a valid California operator's license nor has he ever had or ever possessed, at any time mentioned herein, a valid California operator's license." This finding is also supported by substantial evidence and is not here questioned.

Appellant contends that plaintiff Standard Accident Insurance Company is estopped to urge the warranties that Pratt had a valid California operator's license and did not have a physical impairment because it did not comply with section 443 of the Insurance Code, which reads as follows:

"*Express warranty to be embodied in policy or other instrument.* Every express warranty made at or before the execution of a policy shall be contained in the policy itself, or in another instrument signed by the insured and referred to in the policy, as making a part of it."

This contention is without merit. An express warranty is defined in section 441 of said code as "A statement in a policy of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty

thereof.'' The statements here involved and contained in the application were not referred to in the policy, contained therein or made a part thereof and therefore are not express warranties within the meaning of section 441 of the Insurance Code (*I. Upham Co.* v. *United States etc. Co.,* 59 Cal.App. 606, 611 [211 P. 809]; *Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771, 776 [171 P. 935]), and even when statements in the application are declared to be warranties, they will not be regarded as such if qualified by other stipulations, which afford a fair inference that the parties did not so intend them. (*National Bank* v. *Union Ins. Co.,* 88 Cal. 497, 506 [26 P. 509]; *Wheaton* v. *North British and Mercantile Ins. Co.,* 76 Cal. 415, 423 [18 P. 758].) In 14 Cal. Jur. 422 it is said that the application is the proposal for insurance, and it is in reliance upon the facts stated in the application that the policy is usually issued and that an application is nothing more than a representation by a party when he applies for insurance.

Section 359 of the Insurance Code provides that "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation became false. Section 351 of said code provides that "A representation may be made at the time of, or before, the issuance of the policy. Section 331 of said code provides that "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance. (In *Mirich* v. *Underwriters at Lloyd's London,* 64 Cal.App.2d 522, 529 [149 P.2d 19], it is held as follows:

"It is immaterial whether the omission to state the true facts was intentional or unintentional if defendant was misled by the statements that were made by the applicant. Section 331 of the Insurance Code provides: 'Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.' See, also, *Telford* v. *New York Life Ins. Co.* (1937), 9 Cal.2d 103, 105 [69 P.2d 835]; *Iverson* v. *Metropolitan Life etc. Co.* (1907), 151 Cal. 746 [91 P. 609, 13 L.R.A.N.S. 866]; and *Pierre* v. *Metropolitan Life Ins. Co.* (1937), 22 Cal.App.2d 346 [70 P.2d 985].''

Concealment is defined in section 330 of said code as neglect to communicate that which a party knows, and ought to communicate, and section 334 provides that "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the

communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." ■ There is substantial evidence herein showing that Pratt concealed the fact that his eyesight was impaired, that he did not have a valid California operator's license and that his representations in the application respecting these matters were false. In either case the plaintiff insurance company was entitled to rescind the contract if the concealments or representations were material in inducing it to issue the policy.

Mr. Thompson, underwriting manager for the Departments of Insurance of the Automobile Club of Southern California, testified that in issuing an insurance policy, the company wanted information concerning operators' licenses and that:

". . . [w]e take its presence to indicate two or three things, among them, first, that the applicant is operating his automobile legally, with the result that when we issue him a policy of insurance we are insuring a legal operation, and we do not wish to insure any but a legal operation; second, the possession of a California's operator's license is proof of prima facie evidence, at least, that the applicant has passed some check as to his eyesight, and should therefore have sufficient vision to enable him to drive then in a reasonably safe manner; second, that he has at least an elementary or rudimentary knowledge of the motor vehicle laws of the State of California; and third, that he has demonstrated to an employee of the Department of Motor Vehicles a certain degree of driving proficiency behind the wheel. Those were the main reasons."

There was substantial testimony that if the company had known that Pratt did not have a valid California operator's license, it would not have taken his application. The record also discloses sufficient substantial testimony to support the inference that the representations made by Pratt in his application and here involved were material.

■ Appellant argues that a rescission of the contract on October 12, 1951, is not binding upon appellant intervener since the accident in which she was injured occurred on August 4, 1951. However, where, as here, the rescission is made because of material false representations, it dates back to the time the representations became false and voided the policy *ab initio*. In *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 189 [237 P. 33], it was held that: "Material facts intentionally concealed or false representa-

tions made in reference to them with intent to mislead the insurer is fraud, which, at his option, avoids the policy; and where it is provided that a concealment will warrant the rescission of a contract of insurance, rescission is not an exclusive remedy, as contended by respondent Commission, and the insurer may set up the concealment in an action on the policy. (32 C.J., p. 1271.)''

In *Emery* v. *Pacific Employers Ins. Co.,* 8 Cal.2d 663 [67 P.2d 1046], plaintiffs recovered judgment against one James Bronis for injuries received when the automobile in which they were riding was struck by an automobile being driven and owned by Bronis. The judgment being unpaid, they brought action against the defendant insurance company upon a policy of automobile liability insurance, issued by it to Bronis, and the court held, at page 665:

''The contention of the defendant insurance company is that the policy is void by reason of false representations contained in the application for insurance and false warranties of the insured in the policy. By statutory provision and similar terms of the policy the right of the injured person who has secured judgment against the insured is to bring an action against the insurer 'on the policy and subject to its terms and limitations'. Hence if the policy is void or voidable as to Bronis, plaintiffs cannot recover thereon.'' (Citing cases.)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 27, 1955, and the petition of intervener and appellant for a hearing by the Supreme Court was denied March 3, 1955. Carter, J., was of the opinion that the petition should be granted.