E. Vernon ASHLEY; Kathleen Ann Goff, Charles T. Goff, Jr., and Bette Jo Goff, minors, by and through their guardian ad litem, Charles T. Goff; and Charles T. Goff, Plaintiffs,

v.

AMERICAN MUTUAL LIABILITY INSURANCE CO., a Massachusetts corporation, Defendant.

AMERICAN MUTUAL LIABILITY INSURANCE CO., a Massachusetts corporation, Cross-complainant,

v.

E. Vernon ASHLEY, Cross-defendant.

Civ. No. 7473.

United States District Court.
N. D. California, N. D.
Oct. 23, 1958.

Hancock & Lundgren, Modesto, Cal., for plaintiffs, Goffs.

No appearance by or for plaintiff and cross-defendant, E. Vernon Ashley.

Lamb & Hoge and Robert L. Lamb, San Francisco, Cal., for defendant and cross-complainant.

HALBERT, District Judge.

During the latter part of 1954, E. Vernon Ashley, M.D., was employed by A. E. Carter, M.D., in the medical offices of Dr. Carter. While so employed, Ashley engaged in the treatment of a Mrs. Adelstein. A criminal prosecution grew out of said treatment, and in the month of December, 1954, Ashley pleaded guilty to a four count complaint charging him with violations of West's Ann.California Health & Safety Code §§ 11165 and 11225.[1] As a result, Ashley lost the use of his narcotic stamp.

1. "11165. No person shall issue a prescription that is false or fictitious in any respect."

"11225. Every person who issues a prescription, or administers or dispenses a narcotic shall make a record that, as

In January, 1955, Ashley applied to the American Mutual Liability Insurance Company, the defendant and cross-complainant in this action (hereinafter referred to as defendant), for a policy of professional malpractice insurance in the sum of $25,000. The application was accepted, and a policy issued, which policy was subsequently renewed in May of 1955.

During the time and coverage of said policy, Ashley continued in the practice of medicine, and, later in 1955, treated Bette Jo Goff, who died soon after. An action was brought against Ashley for malpractice by the heirs of Mrs. Goff. This action resulted in a judgment being recovered against Ashley in the state courts. During the course of the Goff trial in the state court, defendant (here) withdrew from the defense of Ashley, returned the premiums theretofore paid, and attempted to rescind its malpractice insurance policy.

■■ The instant action is brought by Ashley, and by the heirs of Mrs. Goff, seeking declaratory relief as to the liability of defendant on said policy.[2] Jurisdiction is premised on Title 28 U.S. C.A. §§ 1332 and 2201. It being clear from the record in this case that plaintiffs are all California citizens; that defendant is a Massachusetts corporation; and that there is a justiciable controversy sufficient to meet the requirements of this Court (American General Ins. Co. v. Booze, 9 Cir., 146 F.2d 329); jurisdiction does exist. The policy having been applied for and delivered in the State of California, and the claim having been there made against the insurer, it is a California contract, and the insurance laws of California are to be applied to its construction and interpretation (Equitable Life Assurance Society of the United States v. Pettus, 140 U.S. 226, 11 S.Ct. 822, 35 L.Ed. 497; and General Accident, Fire & Life Assur. Corp. Ltd. v. Industrial Accident Commission, 196 Cal. 179, 237 P. 33).

■ An insurance contract traditionally requires the highest good faith (West's Ann.California Insurance Code, § 332) for the parties are in *uberrimae fidei* (Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; and Gates v. General Casualty Co., 9 Cir., 120 F.2d 925). Thus a failure to disclose conditions materially affecting the risk, of which the insured is aware (West's Ann.California Insurance Code, §§ 330 and 332; and Travelers' Ins. Co. v. Byers, 123 Cal.App. 473, 11 P.2d 444) makes the contract voidable at the option of the insurer (Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202). Where there is either concealment or false representation of a material fact, a proper remedy of the insurer is rescission (West's Ann.California Insurance Code, §§ 331 and 359), which is accomplished by the return of premiums paid and the giving of notice to the insured (Standard Accident Ins. Co. v. Pratt, 130 Cal.App.2d 151, 278 P.2d 489; and Georgia Casualty Co. v. Boyd, 9 Cir., 34 F.2d 116). If the policy involved in this case is thus void or voidable, there can be no recovery thereunder by the Goffs (Emery v. Pacific Employers Ins. Co., 8 Cal.2d 663, 67 P.2d 1046; and Robinson v. Occidental Life Ins. Co., 131 Cal.App.2d 581, 281 P.2d 39), since defendant has complied with the requirements of notice and tender of premiums paid.

to the transaction, shows all of the following:

"(a) The name and address of the patient.

"(b) The date.

"(c) The character and quantity of narcotics involved.

"(d) The pathology and purpose for which the prescription is issued, or the narcotic administered, prescribed, or dispensed."

2. While Ashley joined in the complaint, praying for reimbursement of costs incurred in the defense of the Goff action, after the withdrawal of defendant, he made no appearance in this Court, either through an attorney or in *propria persona*, so no consideration will be given to his portion of the prayer.

In support of its right to rescind, defendant has raised two affirmative defenses, namely, (1) concealment of material facts, and (2) misrepresentation of material facts. These defenses will be considered separately.

## I. Concealment

Defendant claims the right to rescind, on the ground of concealment, on the theory that Ashley was required, but failed, to notify defendant at the time application was made, that Ashley had suffered a conviction for violation of the West's Ann.California Health & Safety Code, and had lost the use of his narcotic stamp.[3] Defendant argues that West's Ann.California Insurance Code, §§ 332 and 334, read together, require Ashley to affirmatively state the above mentioned facts. Such a reading would result in the sole test being that of the insurer's concept of materiality, and would eliminate consideration of the insured's belief in that respect. An examination of the California case law precludes such an argument, where, as here, there was no showing that Ashley did, or should have believed, that his conviction or loss of narcotic stamp, were material to the risk involved in the type of policy issued him by defendant.

The general rule is stated to be: Where the insurer makes no inquiry, and insured makes no representations as to the facts in question, in the absence of actual fraud such concealment is not a ground for avoiding a policy (29 Am.Jur. Insurance, § 540; and 45 C.J.S. Insurance § 473(3)). This broad rule is, however, not applicable in California. In California there must first be actual knowledge of the fact alleged to be concealed (West's Ann.California Insurance Code, §§ 330 and 332). The extent of such knowledge is tested by the insured's good faith belief at the time of application, *and subsequent events proving it to be unfounded or false are not sufficient to allow the insurer to avoid the policy* (Chase v. Sunset Mutual Life Ass'n, 101 Cal.App. 625, 281 P. 1054. See also: Newman v. Fireman's Ins. Co., 67 Cal. App.2d 386, 154 P.2d 451; and E. A. Boyd Co. v. United States Fidelity & Guaranty Co., 35 Cal.App.2d 171, 94 P.2d 1046).

Ashley did in fact have actual knowledge of his conviction and of the loss of his narcotic stamp. However, no question in the application was specifically directed toward such matters, and as a result, the issue really is whether Ashley had a duty to call defendant's attention to these facts (See: Gates v. General Casualty Co. of America, supra). There was no showing that Ashley thought, or had reason to believe, that these matters were material (West's Ann.California Insurance Code, § 332; and Olson v. Standard Marine Ins. Co., 109 Cal.App.2d 130, 240 P.2d 379). As a result, there could be concealment only if Ashley's conviction and loss of his narcotics stamp were material as a matter of law (West's Ann.California Insurance Code, §§ 332 and 334).

It has been held that after an insurance policy has been issued, and there is a change of circumstances surrounding the risk insured, there is a duty to notify the insurer of this change even though such change has reduced the actual risk (Miller v. Security Insurance

---

**3.** The relevant portions of the West's Ann. California Insurance Code are:

"330. Neglect to communicate that which a party knows, and ought to communicate, is concealment.

"331. Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

"332. Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.

"334. Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

Co., 131 Cal.App. 217, 21 P.2d 659). However, in the absence of proof of an applicant's belief that the matters concealed are material, no such affirmative duty has been imposed as a matter of law at the time the original policy was sought (Newman v. Fireman's Ins. Co., supra). At that time, a failure to inquire into a subject, with specificity, is held to indicate an entire lack of interest in it (Farmers Automobile Inter-Insurance Exchange v. Calkins, 39 Cal. App.2d 390, 103 P.2d 230). This rule holds even as to prior insurance history (Newman v. Fireman's Ins. Co., supra) where no attempt to elicit such history is made (See: Robinson v. National Automobile & Casualty Ins. Co., 132 Cal.App. 2d 709, 282 P.2d 930).

In a recent case, where the insurer defended a suit on the policy on the grounds that the insured had used various names, had conducted houses of prostitution, had been arrested therefor, and there had been prior cancellations of other such policies, the court held that such facts were not material as a matter of law. In that case the court said: "Appellant by its own conduct evidenced its lack of interest, and therefore the materiality to it, as to * * * the moral and criminal history of respondent * * *" (Olson v. Standard Marine Ins. Co., supra [109 Cal.App.2d 130, 240 P.2d 385]).

■ As Ashley's criminal conviction, and the loss of his narcotic stamp, are not material as a matter of law, and as defendant has not met the burden of proving their materiality as a matter of fact, the defendant's defense of concealment cannot stand.

## II. Misrepresentation

Defendant raised the defense of misrepresentation by introducing into evidence the application-binder form which, after its completion by Ashley, was ac-

cepted and a policy of professional liability insurance issued. Question 15 therein, as here relevant, reads as follows: "No claims for professional errors or mistakes have ever been made against me * * *". The answer, made by Ashley, was "None".

■ At this point it is appropriate to consider plaintiffs' contention that no statement made in the application can bind Ashley, regardless of its falsity, as the application was not attached to or incorporated in the final policy. In support of this view, plaintiffs have directed the Court's attention to West's Ann. California Insurance Code § 10381.5, which provides: "The insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof * * *". On its face, this section would seem to preclude any effort on the part of defendant to allege a material false representation by Ashley in his application, for the application was in fact not "attached to or endorsed on the policy when issued" (§ 10381.5, supra). This section, however, does not stand alone. It is a portion of the West's Ann. California Insurance Code, a comprehensive scheme of insurance regulation, and appears in Part 2, Chapter 4, entitled, "Standard Provisions in Disability Policies." There is no indication that it is intended to apply to all types of insurance. The contrary is, in fact, the case (See: Martin v. Mutual Benefit Health & Accident Ass'n, 71 Cal.App.2d 557, 563, 162 P.2d 980. See also: Employers' Liability Assurance Corp. v. Industrial Accident Comm., 177 Cal. 771, 171 P. 935).

■ As Ashley's answer to question 15 may properly be considered, this Court must now determine whether the answer was false so as to make the policy voidable and allow defendant to rescind.[4]

4. Where a question is asked in an application, it is generally deemed material (Iverson v. Metropolitan Life Ins. Co., 151 Cal. 746, 91 P. 609, 13 L.R.A.,N.S., 866; and Pierre v. Metropolitan Life Ins. Co., 22 Cal.App.2d 346, 70 P.2d 985), especially where it is directed to prior insurance experience (Robinson v. National Automobile & Casualty Ins. Co., 132 Cal. App.2d 709, 282 P.2d 930). The fact that the question is asked shows that the insurer considers the matter materi-

Defendant alleges that there was a claim for malpractice against Ashley, of which he had knowledge, at the time application was made. This "claim" is one said to have arisen from Ashley's treatment of Mrs. Adelstein. The evidence adduced at the trial showed that during the month of November, 1954, while Ashley was a patient in the Glendale Sanitarium, Mrs. Adelstein made a phone call to one of Dr. Carter's nurses. The nurse received this call at home and reported the message to Mrs. Carter, the office manager, when she went to work the next day. Mrs. Carter then told Dr. Carter and Mr. Mikkelson, the latter being the business manager. While exact words of Mrs. Adelstein have been lost with the passage of time, their import was that Mrs. Adelstein was dissatisfied with Ashley, that the excessive use of narcotics in his treatment of her had caused her to become addicted to them, and that she was contemplating suit.

■ Both Dr. Carter and Mr. Mikkelson visited Ashley at the sanitarium and told him of this. (While there was some evidence to the contrary, this Court finds that Ashley could and did fully understand their discussion at that time.) There was no evidence that Ashley was informed of more than the rather sketchy informal complaint by Mrs. Adelstein (While Dr. Carter's letter to Ashley, written during this period, refers to an "impending lawsuit," Dr. Carter also stated that he expected it to "blow over.") made to a nurse who was off duty, and delivered by Mrs. Adelstein

directly rather than through an attorney.[5]

Thus, this issue resolves itself down to the simple problem: Did question 15, as prepared by defendant and submitted to Ashley, cover both formal and informal complaints?

■ It is settled that the language of an insurance policy is to be construed most strongly against the insurer (West's Ann.California Civil Code, § 1654; Narver v. California State Life Ins. Co., 211 Cal. 176, 294 P. 393, 71 A.L.R. 1374; Miller v. United Ins. Co., 113 Cal.App.2d 493, 248 P.2d 113; and Erickson v. Allstate Insurance Co., D.C., 126 F.Supp. 100, affirmed 9 Cir., 227 F.2d 755). Where there is any doubt, or any ambiguity about the meaning of a policy of insurance or some part of it, the resulting uncertainty will be resolved by a construction in favor of the insured. The insurer is bound to use such language as to make the questions in the application clear to the ordinary mind (Hobson v. Mutual Benefit Health & Accident Ass'n, 99 Cal.App.2d 330, 221 P.2d 761; and Ensign v. Pacific Mutual Life Ins. Co., 47 Cal.2d 884, 306 P.2d 448).

Question 15 asked whether any " * * claims *for* professional errors or mistakes have ever been made * * *" (Emphasis added). This wording encompasses a much more formal complaint than that made by Mrs. Adelstein; that is, more than a phone call placed to a third party, with no indication that the message was to be conveyed to Ashley.[6]

al, and the insured's answer thereto is held to evidence assent to that view (O'Connor v. Grand Lodge A. O. U. W., 146 Cal. 484, 80 P. 688 and Mirich v. Underwriters at Lloyds, London, 64 Cal. App.2d 522, 149 P.2d 19).

It is not here necessary to decide whether defendant met the burden of proving Ashley's answer was material as the case will be disposed of on another ground.

5. While Mrs. Adelstein did, after application had been made, sue Ashley, this fact has no bearing on the instant prob-

lem. Ashley's knowledge is to be tested by his good faith belief at the time application was made. Subsequent events, showing such belief to be unfounded, are not sufficient to void the policy (Chase v. Sunset Mutual Life Ass'n, 101 Cal.App.2d 625, 281 P. 1054).

6. Although the question does not have to be reached here, it well may be that had question 15 made inquiry about claims *of* professional error, such a formulation of the question might well have included the Adelstein complaint.

Defendant was in the business of selling insurance, and was in a position to know of the possibility that facts such as here prevail might arise. Any printed declarations or questions that defendant might have felt to be proper or desirable could have been printed in the application. The choice of the words used was with defendant, and defendant chose to couch question 15 in the language hereinabove set forth. Had defendant desired more detailed, different, or other information, it could easily have asked for it. Ashley's answer to question 15 was not *per se* false, and could well have been believed by him to be true. It must be presumed that he was innocent of any wrongdoing (West's Ann. California Code of Civil Procedure, § 1963, subd. 1), and that he was, therefore, innocent of any evil intent when he gave the answer that he did.

Where there is doubt as to the scope of a question, other things being equal, that construction will be adopted which is most beneficial to the insured (Berliner v. Travelers' Ins. Co., 121 Cal. 458, 53 P. 918, 41 L.R.A. 467; and Erickson v. Allstate Ins. Co., supra).

The settled applicable California law requires defendant to assume the burden of showing that Ashley's answer to question 15 was false, or that Ashley had reasonable cause to believe that it was false (Wills v. Policy Holders Life Ins. Ass'n, 12 Cal.App.2d 659, 55 P.2d 920; and Brubaker v. Beneficial Standard Life Ins. Co., 130 Cal.App.2d 340, 278 P.2d 966. See also: Turner v. Redwood Mutual Life Ass'n, 13 Cal.App. 2d 573, 57 P.2d 222). Defendant has failed to meet the burden of proof thus required. It follows that judgment must be for the plaintiffs who are now before the Court in this case, and against the defendant, both on the original action and also on its cross-complaint.

Let judgment be entered in favor of the plaintiffs (exclusive of E. Vernon Ashley, who is not before the Court at this time), and against the defendant, both as to plaintiffs' complaint and the cross-complaint insofar as the latter affects the plaintiffs Goffs.

Counsel for plaintiffs Goffs will prepare findings of fact and conclusions of law, a form of judgment and all other documents necessary for the disposition of this case. Said documents will be lodged with the Clerk of this Court pursuant to the law and rules applicable.