[Civ. No. 6193.   Third Appellate District.—October 16, 1939.]

E. A. BOYD CO. (a Copartnership), Respondent, v. UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant.

Horace W. B. Smith, Gerald M. Desmond, and Stanley M. Reckers, for Appellant.

Butler, Van Dyke & Harris for Respondent.

THOMPSON, Acting P. J.—The defendant has appealed from a judgment of $1934.58 which was rendered against it in a suit on a surety bond indemnifying the plaintiff against defalcations of its employees.

It is contended the judgment is not supported by the evidence, and that the findings do not support the judgment for the reason that the bond became void because the plaintiff possessed knowledge of the employee's previous embezzlement seven years earlier while he was acting as clerk in the Sacramento branch of the Bank of America, and

failed to disclose that fact to the insurance company in requesting that the name of that employee should be included among the persons covered by the bond. It is also asserted the findings are irreconcilably conflicting.

For twenty-five years the plaintiff operated an automobile business at Sacramento. The partnership engaged scores of employees. E. A. Boyd and C. M. Coffing were the only partners. R. H. Mayhood acted as manager of the business. In 1933, Merwin L. Devin served the partnership as a salesman for eight months. He voluntarily left to accept employment with a similar company in San Francisco, where he was working at the time he was engaged by plaintiff to become its cashier and accountant. His conduct was exemplary while he was first employed with the plaintiff. At no time since his difficulty with the Bank of America seven years previously was his honesty or reliability questioned by his employers or by anyone else. The plaintiff believed he was then trustworthy in spite of his former trouble.

During the time involved in this suit the plaintiff carried with the defendant insurance company, a blanket fidelity bond of $39,500, covering each of its employees for specified sums, by the terms of which it was agreed plaintiff would be compensated for losses sustained on account of any acts of "fraud, dishonesty, forgery, theft, larceny or embezzlement", by its employees. The bond also covered any new employees whose names were subsequently listed by the partnership, after notice thereof to, and acceptance by, the insurance company. The bond provides in that regard: "On application, other employees may be added hereto *by the Insurer issuing its written acceptance.*"

In 1936, the plaintiff was in need of an accountant in its branch office at Reno, Nevada. Mr. Mayhood, the manager of the partnership business, is an uncle by marriage of Merwin L. Devin. In October of that year, he met Mr. Boyd in San Francisco, and talked with him about employing his nephew as clerk and accountant in his Reno office. At that time they discussed to some extent the former trouble which Mr. Devin had with the Bank of America. Mr. Boyd did not know exactly what that difficulty was, but thought it involved a charge of dishonesty and that Mr. Devin had been imprisoned in the county jail. He said that Devin's conduct had not been questioned since then, and he assumed

he was then trustworthy. He testified regarding that conversation:

"I naturally would have discussed his qualifications. . . . He had worked for us before, and he had been working around for about seven years [since that time]. . . . He was doing . . . like kind of work for the C. I. T. Corporation. . . . Q. . . . You, of course, knew of the fact that he had been in trouble with the Bank of America in 1929 or 1930, did you not? A. I knew he was in some discrepancy down there, that is true. I wasn't exactly familiar with the whole details, but I did know that he had been in trouble. . . . I didn't know the exact amount of money that he had taken. . . . I knew he had been in some trouble down there, and . . . apparently had got it cleared up. But what happened, I don't know. . . . I did know he had served time in the county jail, and I understood from him, as he told me himself, that it was a controversy and everything had been fixed up."

Mr. Boyd said he had confidence in Mr. Devin because he had previously worked for him several months, and for others during that period of seven years, without any question regarding his honesty or reliability having arisen; that Devin was then employed with the San Francisco firm, and would be required to give reasonable notice terminating his service before he could accept the new job. He therefore authorized Mayhood to employ him. Mr. Boyd had no personal part in notifying the bonding company to add Devin's name to the list of insured employees. That was done by Miss Irwin, the bookkeeper in the Sacramento office.

Mr. Devin was then employed by plaintiff as cashier and accountant in the Reno office about November 1, 1936. J. V. McClatchy Insurance Company of Sacramento was acting as agent for the defendant. The bookkeeper of the Boyd Company notified the McClatchy Company, in writing, November 6, 1936, of the employment of Devin, and requested that his name be included among its bonded employees and covered by insurance in the sum of $2,000. Plaintiff's premium on the bond was determined by the aggregate sum of insurance carried on all the employees. The McClatchy Company promptly notified the defendant in writing at its San Francisco office of the plaintiff's request to add to the list of employees covered thereby Devin's name as cashier and accountant in the Reno office, for $2,000 insurance. Ger-

trude Castro, secretary and bonding clerk in the defendant's San Francisco office, received that communication and promptly entered Devin's name as requested, notifying the Boyd Company of that action within a couple of days of the receipt of that request. The defendant thereby accepted the name of Devin as an insured employee of plaintiff under the bond as required by the contract.

The record discloses the fact, and the court found that the defendant bonding company was one of the insurers of the Bank of America at the time of the defalcation of Devin seven years previously, and actually paid to the bank part of its losses on that account. The records of the defendant disclosed the fact that Devin had been charged with embezzlement of $11,000 from the bank. His name, however, appeared on their records as M. L. Devin, and not as Merwin L. Devin. The agents of the defendant were reminded of Devin's former peculations when his name was presented as an employee of the Boyd Company, for they soon began an inquiry regarding his identity, but failed to follow it up with diligence.

The plaintiff's written notice of employment of Devin, which was forwarded by the McClatchy Company to the defendant's office at San Francisco, was dated November 6, 1936, and contained the following request:

"Please make the following changes on our schedule bond policy #15258–03–04–34:

### ADDITIONS

"Merwin L. Devin    Cashier-Clerk    Boyd Reno    2000.00"

The notice contained seven other names to be added and a request to eliminate from the bond four persons whose services had been discontinued.

The requested changes were made, and the Boyd Company was promptly notified in writing of the acceptance thereof. Defendant's bonding clerk, Gertrude Castro, had authority to accept such changes. The language of the bond did not require as a prerequisite to acceptance of the names of new employees that they should furnish the defendant with signed applications therefor. It was evidently customary for the defendant to accept such requests for changes without written applications therefor signed by the employees. Mr. Copeland, superintendent of the San Francisco branch of the defendant company, testified in that regard:

"There is no requirement for an application on this bond form." The custom of the surety company was to automatically make such additions or changes in the names of employees covered by the bond, as were requested by the plaintiff, and notify it to that effect. Later if any question regarding their reliability arose, the defendant requested its agents to procure from the employee a formal written application, upon which the company instituted an investigation. No such written application was provided for by the bond. Although the defendant had knowledge of Devin's previous record, which should have prompted an immediate investigation, through the negligence of its agents none was made. No attempt was made to rescind the bond with respect to its liability for Devin's conduct until he had embezzled the funds and fled.

Replying to the notice which was forwarded to the home office of the defendant informing it that the name of Merwin L. Devin had been added to the bonded list of employees of the Boyd Company, the investigation department of the defendant's home office at Baltimore wrote to its San Francisco office December 17, 1936, saying:

"We will appreciate it very much *if you will pull your file* on the above mentioned individual and inform us if there is anything tending to indicate that this principal M. L. Devin, who we bonded in favor of the Bank of America, San Francisco, California, are one and the same persons."

On January 12, 1937, the San Francisco branch again wrote to its Sacramento agent as follows:

"On checking our records we find that we have never received application on behalf of Merwin L. Devin, Item 128 under the above schedule. We would thank you to kindly secure application and forward as soon as possible.

"Confidentially, we might advise *we received advice from our home office* that this man might possibly be the same person on whom we previously have had some difficulty with regarding a bond."

No attention was given to any of these requests to check on Devin's previous record or to procure his application to be placed on the bonded list. February 1, 1937, the defendant again wrote to its agent, the McClatchy Company, in that regard, saying:

"To date we have not received an answer to our letter of January 1st requesting applications on the following salesmen, . . . Merwin L. Devin, Boyd.

"Our home office has again written us for these various applications."

March 8, 1937, the defendant's San Francisco office once more wrote its agent, the McClatchy Company, regarding that matter, as follows:

"The home office have been pressing us for some time to give them information on item #128, Merwin L. Devin. We have written your agency a number of letters in an endeavor to obtain this application. . . .

"You will realize these salesmen's jobs are of a hazardous nature and it is most important that we be promptly furnished with applications for investigation purposes.

"We will therefore appreciate this being given your personal attention. If there is to be any further delay in the furnishing of Mr. Devin's application, please let us have your immediate explanation."

Devin's name was never stricken from the bonding list. Information regarding Devin's former peculations while he was employed in the Sacramento branch of the Bank of America was either known to Mr. McClatchy's insurance organization, which was the agent of the defendant, or it was readily available to it. Louis Schroeder, who was an assistant manager of the McClatchy Company at Sacramento, testified that he had been acquainted with Devin and his family for many years, and that he knew all about his trouble over the alleged embezzlement of funds from the Bank of America several years previously. He said he had not been consulted regarding that matter. Evidently the McClatchy Company made no inquiry or investigation regarding the identity or character of Devin, in spite of the numerous requests from the San Francisco office to do so.

Just prior to March 2, 1937, Devin disappeared from Reno, and upon examination of his books it was discovered he was short in his accounts. The plaintiff notified the surety company on the last-mentioned date of Devin's defalcation, through its Sacramento agent, the McClatchy Company. Liability on the part of the insurance company was denied. The defendant served notice of rescission on April ·26, 1937. This suit was then commenced. It was tried by the court sitting without a jury.

The trial court found that when the defendant was requested by plaintiff to place the name of Merwin L. Devin on the list of bonded employees, the partnership possessed information charging it with knowledge of his former trouble with the Bank of America regarding the embezzlement, and that it did not inform the defendant of that fact, but in good faith believed he was then reliable and a safe risk; that the defendant possessed sufficient knowledge of Devin's former peculations to place it on inquiry regarding his character, having the name of M. L. Devin in its records as a former embezzler, and, as coinsurer of the bank, having paid a part of the bank's loss on that account; that the defendant disclosed its knowledge of Devin's guilt by several letters of inquiry written to its agents, but negligently failed to follow up its investigation; that the plaintiff violated none of the terms or requirements of its bond and that it was not rendered void for failure to disclose knowledge of Devin's former dishonesty, but on the contrary that defendant was liable upon its bond in the sum of $1934.58, since it possessed knowledge of facts which should place a reasonable person on inquiry regarding the former embezzlement of the employee. Judgment was rendered accordingly. From that judgment this appeal was perfected.

We are of the opinion the evidence adequately supports the findings and judgment.

The failure of plaintiff to voluntarily inform the defendant of its knowledge of the previous embezzlement of its employee, Devin, at the time his name was accepted for insurance under the bond, does not constitute such fraud or concealment of material facts as will render the bond void under the circumstances of this case. Mr. Boyd in good faith then believed that he could depend on the honesty of Devin, in spite of the fact that he had been charged with embezzlement while he was employed by the Bank of America seven years previously, since he had been subsequently hired by the Boyd Company and by another similar firm for several years without any question of his reliability having arisen. The plaintiff's good faith was a matter for the determination of the trial court. Mr. Boyd made no misrepresentations regarding his character or standing. He was not questioned by the insurance company regarding Devin's honesty or previous conduct. The bond contains no provision declaring that it shall become void for previous acts of dis-

honesty on the part of the employee. It does not require a written application of the employee as a prerequisite to acceptance under the bond. ▮ Mr. Louis Schroeder, an assistant manager in the Sacramento office of the McClatchy Insurance Company, which was the local agent of the defendant bonding company, had full knowledge of the previous charge of embezzlement against Devin, and as an officer of that company his knowledge would be imputed to the defendant. (*Fishbeck* v. *Phenix Ins. Co.*, 54 Cal. 422; 32 C. J. 1323, sec. 574.) Moreover, the defendant is charged with knowledge of that former embezzlement for the reason that its records contained the name of M. L. Devin as a former embezzler while he was working for the Bank of America at Sacramento, and the defendant as coinsurer of the bank had in fact paid part of that liability to the bank. The fact that his name appeared on its records as M. L. Devin instead of Merwin L. Devin is not material. ▮ The defendant knew the defalcation which it had indemnified occurred in Sacramento. It would have been easy to obtain information from the bank, from its agent, the McClatchy Company, or from the plaintiff, positively identifying the employee as the same individual. The defendant evidently believed Merwin L. Devin was the same person whose defalcation it had previously paid to the bank, for its Baltimore office investigation department wrote the San Francisco branch December 17, 1936, asking it to examine its files with respect to Merwin L. Devin, to see if ''M. L. Devin, who we bonded in favor of the Bank of America . . . are one and the same persons''. If the defendant's files had been examined, or a further investigation had been made, the defendant certainly would have been conclusively informed that he was the same individual. No further inquiry was made regarding that subject. That information was sufficient to place a reasonably prudent person on further inquiry. With that information available the defendant exercised no further diligence to protect itself. It did not communicate with the plaintiff in that regard. Devin's name was not stricken from the bonded list. All that it did subsequently was to request its local agent to procure the written application of the employee. No effort seems to have been made to fulfill that request. The bond does not require a written application of the employee to be filed. Under such circumstances the defendant is estopped from claiming that the

bond is void for the first time after notice of the defalcation of the employee.

Where the bond contains no clause rendering it void for former defalcations of an assured person and no questions are asked of the insured regarding the character or honesty of a bonded employee, and no misstatements are made regarding material facts, the failure to voluntarily disclose the fact that the employer knew of a previous charge involving the dishonesty of an employee which occurred seven years before the application is made to bond him may not cause the insured to be charged with fraud or concealment which will render the bond void, particularly when the insurer is possessed of facts which should place a reasonably prudent person on inquiry regarding that offense, or omission. (*Fishbeck* v. *Phenix Ins. Co., supra; O'Rourke* v. *John Hancock Mutual Life Ins. Co.*, 23 R. I. 457 [50 Atl. 834, 91 Am. St. Rep. 643, 57 L. R. A. 496] ; 3 Cooley's Briefs on Ins., 2d ed., p. 1969, subd. 6 [h].) In the authority last cited, at page 1970, after reviewing the authorities concerning undisclosed statements, it is said:

"From these cases the rule may be deduced that facts which the insurer knows, *or which he is bound to know, and may therefore be presumed to know, need not be disclosed.*"

In the Fishbeck case, *supra*, a fire insurance policy was held to be valid and binding on the insurer, although the insured person failed to disclose the fact that his property was already covered by other companies, in spite of the fact that the policy contained a clause rendering it void "if any other insurance *had been* or shall hereafter be made upon the said property and not consented to by this company in writing". In that case it appeared the soliciting agent of the insurance company had previous knowledge of the other policies carried by the insured person on the same property. The court held that knowledge of the agent was imputed to the principal, and that the policy was therefore valid, notwithstanding the fact that the insured person failed to disclose the other insurance.

In the O'Rourke case, *supra*, a policy insuring the life of a child was upheld, in spite of the fact that the application therefor contained a false answer to the question, "Has this company ever refused to issue a policy on this life?" To this question the plaintiff falsely replied "No". She testified that she knew that same company had previously re-

jected an application for life insurance on the child. The reason given for affirming a judgment upholding the policy was that the records of the insurance company disclosed the fact that it had previously rejected an application for insurance on the life of that child, and that it was bound to take cognizance of that fact, in spite of the contrary statement of the applicant. The court said in that regard:

"The previous application was in the hands of the company. The rejection of it was by the defendant itself. The purpose of warranties in a policy is not to set a trap for applicants, but to inform the company about important facts upon which the contract is based. When, therefore, a company is in actual possession of knowledge of a fact, and by turning to its own record can assure itself better than by the imperfect memory of an applicant, it is a perversion of the purpose of a warranty to allow it to avoid a contract. It is evident injustice for one party to allow another to enter into a contract which the former knows, or is bound to know, is invalid. (Citing authorities.)

"The defendant argues that it is unreasonable to hold that a company is bound to have present knowledge of all that appears on its previous files. To this suggestion at the trial the judge asked the pertinent question: 'Any more so than it was to ascertain that fact just after the boy died?' "

For reversal in the present case, the appellant relies on sections 330-339 of the Insurance Code of California, as authority authorizing rescission of the bond for failure on the part of the plaintiff to inform the defendant of the previous embezzlement of its employee. The respondent asserts that it was too late for the appellant to rescind the bond on the ground of concealment of material facts after the notice of defalcation had been given. No effort to rescind the bond was made until April 26, 1937, six weeks after the employee absconded. Even though the remedy of rescission may not be available under particular circumstances of a case, the procuring of insurance by means of fraud or concealment may become a good defense to a suit on the bond in a proper case. (*California Reclamation Co.* v. *New Zealand Ins. Co.,* 23 Cal. App. 611 [138 Pac. 960] ; 32 C. J. 1271, sec. 485.) In the authority last cited it is said in that regard:

"Although by statute, it is provided that a concealment will warrant the rescission of a contract of insurance, re-

scission is not an exclusive remedy; and *the insurer may set up the concealment in an action on the policy.*"

The provisions of the Insurance Code above cited, upon which the appellant relies, are, however, not in conflict with what we have previously said regarding the estoppel of the insurance company which was created by its knowledge of the uncommunicated facts complained of. Section 332 of that code provides that:

"Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, *and which the other has not the means of ascertaining.*"

Section 333 provides in part that:

"Neither party to a contract of insurance is bound to communicate information of the matters following, except in answer to the inquiries of the other:

"1. Those which the other knows.

"2. Those which, in the exercise of ordinary care, the other ought to know, and of which the party has no reason to suppose him ignorant. . . . "

Section 335 provides in part:

"Each party to a contract of insurance is bound to know:

"(a) All the general causes which are open to his inquiry equally with that of the other, and which may affect either the political or material perils contemplated. . . . "

It follows that since no questions were asked the plaintiff regarding the honesty or previous record of the employee, Devin, and evidence of his former defalcation was available to the appellant in its own records, the failure of the plaintiff to voluntarily inform the insurance company of that fact is not such fraud or concealment as will warrant the cancellation of the bond on that account.

The findings are not inconsistent. They adequately support the judgment.

The judgment is affirmed.

Deirup, J., *pro tem.*, and Tuttle, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 14, 1939.