### PARRISH v. ACACIA MUT. LIFE INS. CO. et al.

#### No. 8768.

United States District Court
S. D. California, Central Division.

Dec. 30, 1949.

Russell H. Pray, Long Beach, Cal., and Samuel P. Block, Compton, Cal., for plaintiff.

Adams, Duque & Hazeltine, Los Angeles Cal., for defendants.

HARRISON, District Judge.

This case involves the question of whether or not the beneficiary under a life insurance policy is precluded from a recovery by reason of misrepresentations made by the insured in his application, and the giving of a false certificate of continued good health upon the receipt of the policy.

After a verdict in favor of the plaintiff, defendant has moved for a judgment notwithstanding the verdict and in the alternative for a new trial pursuant and in conformity to the provisions of Rule 50(b), Fed.Rules Civ.Proc. 28 U.S.C.A. The plaintiff contends that the misrepresentations and false certificate were not material to the risk. The defendant contends otherwise. This case is governed by California law.

On October 17, 1946, the insured aged 46 made application to the defendant insurance company for a $10,000 ten year term life policy. In writing he answered certain questions as follows:

"8. Have you ever had or been under treatment, observation, or diagnostic study by a physician, specialist, or other practitioner for any of the following? (These questions must be asked and answered with careful deliberation and consideration). For each affirmative answer underline ailment and specify particulars in No. 12.

"a. Heart disease or disorder of any kind, or symptom thereof such as heart weakness or pain, angina, palpitation, shortness of breath, dizziness, fainting spells, dropsy, disease of arteries, elevated blood pressure, varicose veins, etc.     NO

"c. Disease or disorder of stomach, intestines, any abdominal organ, duodenum or bowels; such as, gastric or duodenal ulcer, jaundice, gallstones, gallbladder disease, liver disease, appendicitis, dysentery, diarrhea, fistula, piles, rectal disease, rupture, indigestion, abdominal pains, etc.     NO

Date

"9. When did you last consult a physician, specialist, or other practitioner?  1940

Give name and address of the one consulted and full particulars under 12.  Dr. Wolf

"12. State below the particulars of ALL diseases, injuries, ailments, or surgical operations which you have had or for which you have been under treatment, observation, or diagnostic study. Also give full particulars requested in questions 8, 9, 10, and 11 above.

| Disease, Injury, Ailment or Surgical Operation | Date | No. of Attacks | Duration | Severity | Any remaining effects | Give names and addresses of attending physicians, specialists, or practitioners consulted |
|---|---|---|---|---|---|---|
| Pneumonia | 1905 | 1 | 2 weeks | Mild | No | Dont remember |
| Acute cold | 1940 | 1 | 1 week | Mild | No | Dr. Wolf Ross-Loos Clinic, Los Angeles, Cal. |

| 13. Have you consulted a physician, specialist, or other practitioner not stated above? Give name and address for each one consulted, date of consultation and particulars. | Name | Address | Date of Consultation and Particulars. |
|---|---|---|---|
| | NO | | |

"16. Have you gained or lost weight in the past two years?     NO

"f. How long has weight been stationary?     Several years

"It is hereby certified by the undersigned that the answers and statements made above are correctly and fully stated; that no material circumstance or information has been withheld or omitted concerning the past and present state of health, habits and occupation of proposed insured; and it is agreed that the above statements and answers shall be considered a basis for any policy that may be issued on the life of the proposed insured. If such statements and answers are submitted in connection with an application for reinstatement of insurance, it is agreed that the company shall rely thereon in acting upon such application."

"Signature of
Proposed insured     T. H. Parrish."

On November 6, 1946, the insured, prior to delivery of the policy, signed the following certificate of Continued Health and Contract Acceptance:

"This will acknowledge delivery of Policy No. 648389 such delivery being based upon the following agreements: (1) that said insurance contract is accepted in the form and for the amount issued; (2) that the first premium on said insurance contract was tendered to the company during the continuance of good health of the proposed insured; and (3) that prior to the date said premium was tendered proposed insured, except as stated in the application for said insurance contract, had not been sick and had not consulted or been treated or attended by a physician.

The first premium was tendered on the 6th day of Nov., 1946.

| | |
|---|---|
| Dated at Compton, Calif. | Thomas H. Parish |
| this 6 day of Nov., 1946 | Signature of Insured |
| | Air Mail |

Alexander P. Mattier
Witness to all signatures hereon

Nov. 14, 1946    No.5

(This certificate must be dated and signed in ink. The agent should witness only if parties sign or acknowledge signatures in his presence.)"

The insured died February 8, 1948, from a heart condition the exact nature of which, if known, was never disclosed.

The undisputed evidence discloses that the insured belonged to the Ross-Loos Medical Service and consulted several doctors of said group about twenty times between 1942 and the date of delivery of the policy. The last two visits occurred between the date of the application and the signing of the Certificate of Continued Health and Contract Acceptance.

A number of the consultations and treatments by the doctors of the clinic were what might be classified as inconsequential. On the other hand, several of his complaints were of a more serious nature, such as a fluttery heart after eating, severe cardiac pains, pains in the chest like heart burn, cardiac aching toward the left shoulder blade after eating, lots of heart burn and gas, together with shortening of the breath.

The insured did not mention any of these visits to the various doctors, but remembered when about five years of age he had a mild attack of pneumonia and an acute cold in 1940.

It will be noted he not only denied the consultations and treatments by physicians but denied having the very symptoms that might have, if properly followed up and known to the defendant, indicated an unfavorable heart condition. While the misrepresentations need not have any causal connection with the death of the insured, in this case it emphasizes the materiality of the information withheld.

The California Insurance Code Section 334 provides as follows: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

Answers to questions in an insurance policy are generally considered to be material representations of fact, which if false will vitiate the contract. An answer to a question as to whether an applicant had ever had a specified disease, if false, voids the policy. However, an answer which fails to disclose anything but a minor or temporary indisposition which is easily forgotten is not considered false. Pierre v. Metropolitan Life Ins. Co., 22 Cal.App.2d 346, 70 P.2d 985.

The uncontradicted evidence, in my opinion, discloses that the insured, by false answers, misrepresentations and concealed material facts vitiated the contract of insurance. The examining physician testified that he relied upon the medical history given to him by the insured. The home office representatives testified that the policy would not have been issued had they known the true medical history of the insured, at least until a further investigation had been made.

This case is very similar to the decision of our circuit under date of December 13, 1949, in Mutual Life Insurance Co. v. Ruth M. Morairty, 178 F.2d 470, wherein under Arizona law the court held that an instructed verdict should have been given. In the above-mentioned case the medical history of the insured showed more serious misrepresentations but such misrepresentations had no causal connection with the death of the insured. However, the two cases present identical questions of law. In the case at bar the undisputed evidence discloses material misrepresentations that materially increased the risk. The medical history of the insured was entirely different from that which he represented. It pictured in reality two different risks. The only evidence to the contrary before the jury was an eloquent attorney, a widow and an insurance company.

In addition to the foregoing misrepresentations, I have before me the so-called Certificate of Continued Health and Contract Acceptance.

The undisputed evidence discloses that after the execution of the application, the insured became ill and called Dr. Murrin to his home. The doctor testified that the records of his visit show "aching in the stomach for four days; no nausea, poor appetite, temperature 99.2". An examination was made, there was tenderness to the touch in the epigastrium, the stomach muscles were soft. A complete study was ordered. A blood count was taken at this time and the white count was found to be 19,000. Dr. Murrin further testified that a normal count falls within the range of 6,000 to 10,000. Dr. Lloyd testified that the presence of such a "white count" was indicative of a serious infection in the body.

On November 4, 1946, two days before the delivery of the policy, the insured reported to Dr. Lloyd of the surgical department of the Ross-Los Clinic in Los Angeles. The record of this visit is as follows: "Pain in the lower abdomen 5 days ago; white blood count 19,000, and referred to surgery 10/31/46 but did not come until today. Pain almost gone. Tender only to deep pressure over cacumen and sigmoid. No guarding or rebound. White count now 10,500; polynuclear 67°. Believe acute appendix. Now subsiding. Soft diet and no laxative. Advise removal early if recurs or gets worse."

The insured was bound in good faith and by written contract to report such a material change in his health. The agent testified he would not have delivered the policy if the insured had not signed said contract. That there was a material change in the condition of the insured cannot be doubted. When an individual signs such a certificate two days after he traveled from Compton, California, to the surgical department of the Ross-Loos Clinic in the City of Los Angeles for the ostensible purpose of ascertaining whether surgery was going to be necessary, and having been advised that surgery may be necessary if the attack recurs or gets worse, how can the court without stretching its imagination, hold that such illness was trivial and inconsequential to the risk involved. Certainly no insurance company would deliver a policy if it had known that two days prior thereto, the insured had consulted a surgeon concerning the possibility of surgery. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; New York Life Ins. Co. v. Gist, 9 Cir., 63 F.2d 732; Security Life Ins. Co. v. Booms, 31 Cal.App. 119, 159 P. 1000.

The written conditions upon which the policy was delivered having proven false, the policy itself must fall and be treated as a nullity.

I hold as a matter of law, the court should have granted the request for an instructed verdict for the defendant. Galloway v. U. S., 319 U.S. 372–389, 63 S.Ct. 1077, 87 L.Ed. 1458; White v. New York Life Ins. Co., 5 Cir., 145 F.2d 504–509.

The parties having stipulated that a judgment in favor of the defendant would include a judgment for the return of premiums paid together with accumulated interest, the motion for judgment notwithstanding the verdict is hereby granted and in the alternate, I hereby grant the motion for a new trial on the ground of the insufficiency of the evidence to sustain said verdict. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

The judgment in favor of the defendant will include the return of the premiums and interest to the plaintiff in accordance with the stipulation of the parties

Counsel for the defendant is directed to submit proposed judgment in accordance with the foregoing opinion within ten days from date hereof.