WASHINGTON NATIONAL INSUR-
ANCE COMPANY, a corpora-
tion, Plaintiff,

v.

The ESTATE of John A. REGINATO,
Claudia T. Reginato et al.,
Defendants.

Claudia REGINATO, Plaintiff,

v.

WASHINGTON NATIONAL INSUR-
ANCE COMPANY, Doe One
and Doe Two, Defendants.

Nos. 41199, 41222.

United States District Court
N. D. California, S. D.

June 16, 1966.

Allen H. Trant, Bowman, Trant & Regalia, Oakland, Cal., for plaintiff Reginato.

Harold C. Nachtrieb, Allan, Miller, Groezinger, Keesling & Martin, San Francisco, Cal., for defendant Washington Nat. Ins. Co.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

These two actions were consolidated for trial by stipulation of the parties and by order of the Court. Action numbered 41222 is an action for the recovery of the sum of $50,000 on a life insurance policy issued by the Washington National Insurance Company, hereinafter defendant, on the life of John A. Reginato. Claudia Reginato, hereinafter plaintiff, was the wife of John A. Reginato and is the beneficiary of this policy. The action was brought in the Superior Court of California, County of Alameda, and removed to this Court on the basis of diversity of citizenship. Action numbered 41199 is an action for the rescission of the same life insurance policy for alleged material misrepresentations, and was commenced in this Court on the basis of diversity of jurisdiction.

At the close of the evidence defendant made a motion for a directed verdict, the ruling of the Court was deferred until after the verdict of the jury. The jury returned a verdict for Mrs. Reginato and against the Washington National Insurance Company in the sum of $50,000 in both cases. Defendant then made timely motions for judgment notwithstanding the verdict, or in the alternative for a new trial. As grounds for its motion for judgment notwithstanding the verdict defendant claims: that there is no conflict in the evidence as to the fact that omissions were made in the application for insurance; that the evidence shows that the omissions were material to the issuance of the policy; that there was no evidence from which the jury could reasonably find that the defendant had waived its right to rescind the policy for these material misrepresentations; and that the argument of plaintiff's counsel was directed solely to the sympathies of the jury and made no attempt to explain the case on the basis of the law and the evidence.

 The allegation that judgment notwithstanding the verdict should be entered for the defendant because of the argument of plaintiff's counsel to the jury is without merit.

Defendant alleges that the evidence is uncontradicted that Mr. Reginato made material misrepresentations as to his history of high blood pressure and chest pains or pressure. As a basis for the discussion of defendant's motions the Court will assume without passing on the question that this allegation is true, as the evidence is susceptible of this interpretation.

There is evidence in the case to show that Mr. Reginato, as general agent for the defendant, was familiar with the standards set by the defendant for blood pressure readings. Dr. Whitson, Mr. Reginato's personal physician, testified that within the two years immediately preceding Mr. Reginato's application for insurance Dr. Whitson had recorded at least six readings of Mr. Reginato's blood pressure which were above the level deemed acceptable by insurance companies. The doctor is sure that he must have informed Mr. Reginato of these readings. For a period within these two years the doctor prescribed for Mr. Reginato medication which was specifically prescribed to reduce his blood pressure.

At one time within these two years Mr. Reginato was taking such medication six times a day.

■ Similarly, at least on three occasions Mr. Reginato complained to his doctor of pains radiating up his right arm and across his upper chest. According to the testimony of Dr. Whitson and Mrs. Reginato, these pains had begun prior to the fracture of Mr. Reginato's arm, and had become greater afterward. The pains were accompanied by shortness of breath, nausea, and dizziness. However, in answer to the question, "Have you to the best of your knowledge and belief ever had, or have you ever been told you had or been treated for, any of the following: * * * g. High blood pressure or any chest pain pressure or discomfort?" Mr. Reginato replied "No". There was no ambiguity in the question asked. In view of the evidence presented Mr. Reginato's answer to this question could have been found by the jury to have been false as to matters within his own knowledge.

■ The law in California as to the materiality of this type question is well settled. As stated in Cohen v. Penn Mut. Life Ins. Co., 48 Cal.2d 720, 312 P.2d 241 (1957):

"Where an applicant for insurance is asked generally whether he has had or been treated for any disease or ailment, the failure to mention minor or temporary indispositions is not material to the risk and will not avoid the policy. Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 427, 274 P.2d 633; Pierre v. Metropolitan Life etc. Co., 22 Cal.App.2d 346, 349, 70 P. 2d 985. But the rule is otherwise when the applicant is asked specific questions as to medical history, and false answers thereto will vitiate the contract. McEwen v. New York Life Ins. Co., 187 Cal. 144, 146–147, 201 P. 577; Iverson v. Metropolitan Life etc. Co., 151 Cal. 746, 749, 91 P. 609, 13 L.R.A., N.S., 866; San Francisco Lathing Co. v. Penn M. L. Ins. Co., 144 Cal.App. 2d 181, [186–187] 300 P.2d 715; Pierre v. Metropolitan Life Ins. Co.,

supra, 22 Cal.App.2d 346, 349, 70 P.2d 985. It has been specifically held that misrepresentations as to heart symptoms render an insurance policy uninforceable. California Western States Life Ins. Co. v. Feinsten, 15 Cal.2d 413, 423–424, 101 P.2d 696, 131 A.L.R. 608; Whitney v. West Coast Life Ins. Co., 177 Cal. 74, 80–81, 169 P. 997; Robinson v. Occidental Life Ins. Co., 131 Cal.App.2d 581, 585–586, 281 P.2d 39; Parrish v. Acacia Mut. Life Ins. Co., D.C.Cal., 92 F.Supp. 300, 302–303, affirmed 184 F.2d 185. Where false representations as to material matters have been made, the existence of a fraudulent intent to deceive is not essential. Telford v. New York Life Ins. Co., 9 Cal.2d 103, 105, 69 P.2d 835. "* * * The fact that defendant put the questions in writing and asked for written answers was itself proof that it deemed the answers material. O'Connor v. Grand Lodge A.O.U.W., 146 Cal. 484, 494–495, 80 P. 688; Maggini v. West Coast Life Ins. Co., 136 Cal.App. 472, 475–476, 26 P.2d 263; McEwen v. New York Life Ins. Co., 23 Cal.App. 694, 697–698, 139 P. 242." 48 Cal.2d 725, 726, 312 P.2d 243.

■ Defendant alleges that the uncontradicted evidence shows that there were other material omissions made as to the cure of Mr. Reginato's arm, his drinking habits, his dizzy spells, disorders of his stomach, an unreported electrocardiogram, and an unreported visit to a neurosurgeon. As to these contentions there is evidence to support a jury finding that either no misrepresentations were made, or that if there were misrepresentations that they were not material to the risk of issuing the policy. But assuming for this discussion that these allegations of the defendant are also true, still the defendant is not entitled to a judgment notwithstanding the verdict in this case because of waiver by defendant, a question submitted to the jury.

■■ In considering the question of whether there is sufficient evidence to sustain the jury verdict, the Court must view the evidence in the light most fav-

orable to the prevailing party, "accepting as established all facts which the evidence reasonably tended to prove and giving to the prevailing party the benefit of all inferences which may be reasonably drawn from the evidence." Bank of America N. T. & S. A. v. Hayden, 231 F.2d 595, 602–603 (Cir. 9, 1956). Viewing the evidence in this light there was sufficient evidence from which the jury could reasonably find that the defendant had waived the right to void the policy for these alleged misrepresentations.

 The general rule as to waiver and estoppel as applied in insurance cases is stated in Columbian Nat. Life Ins. Co. v. Rodgers, 116 F.2d 705 (Cir. 10, 1941):

> "There is no doubt but that an insurer may waive provisions inserted in the contract for its benefit, and may be estopped from asserting reasons ordinarily justifying a forfeiture of the policy. Knowledge of facts inconsistent with statements in an application may constitute an equitable estoppel against an insurer precluding it from asserting a ground for avoidance of the contract, and it is not essential that the knowledge be derived from the insured. An insurance company may be charged with knowledge of facts which it ought to have known. See, Supreme Lodge K. P. v. Kalinski, 163 U.S. 289, 16 S.Ct. 1047, 41 L.Ed. 163. Knowledge which is sufficient to lead a prudent person to inquire about the matter, when it could have been ascertained conveniently, constitutes notice of whatever the inquiry would have disclosed, and will be regarded as knowledge of the facts. (Citations omitted)

> \* \* \* \* \* \*

> "Before one can be charged with knowledge of facts available by investigation, there must be a reason or cause for the further investigation and the insurer must be put up on inquiry by some fact or information in the possession of the insurer." 116 F.2d 707, 708.

See also, Apperson v. United States Fidelity & Guaranty Co., 318 F.2d 438 (Cir. 5, 1963); Rutherford v. Prudential Ins. Co., 234 Cal.App.2d 719, 44 Cal.Rptr. 697 (1965); Anaheim Bldrs. Supply Inc. v. Lincoln, 233 Cal.App.2d 400, 43 Cal. Rptr. 494 (1965); Dalzell v. Northwestern Mutual Ins. Co., 218 Cal.App.2d 96, 32 Cal.Rptr. 125 (1963); E. A. Boyd Co. v. United States F. & G. Co., 35 Cal. App.2d 171, 179, 94 P.2d 1046 (1939).

There is evidence to the effect that the alleged misrepresentations were made on July 27, 1961, that the initial review of the policy took place on August 7, 1961, and that the policy was finally reviewed and approved on August 29, 1961. On November 5, 1961 Mr. Reginato suffered his first heart attack and was hospitalized at the Brookside Hospital. Approximately three months had elapsed between the filing of the application for insurance and the first heart attack. Mr. Rodgers, the head underwriter of the defendant, testified that the defendant was informed of the heart attack almost immediately. There is evidence that Dr. Whitson billed the defendant for services rendered to Mr. Reginato for the November 5th attack. But most importantly defendant was not only the insurer under Mr. Reginato's life insurance policy, but also was the insurer under a group hospitalization policy held by Mr. Reginato with the defendant.

As the insurer under the group hospitalization policy defendant paid the expenses of the hospitalization at Brookside Hospital. There is evidence from which the jury could find that the Brookside Hospital records were sent to the defendant in connection with Mr. Reginato's claim for hospitalization. These records state:

> "ONSET OF PRESENT ILLNESS this patient states he has been subject to pains in his anterior upper chest intermittently for ' the last four years. \* \* \*" Defendant's Exh. G.

 Here was a statement flatly contradicting the answer given by Mr. Reginato in his application to the question concerning heart symptoms. The jury could justifiably find that this contradiction to a matter of such importance in

relation to the risk of insuring Mr. Reginato's life demanded further inquiry.

Defendant claims that knowledge of a false answer would only raise a suspicion that other answers are false and would not put the defendant on inquiry notice. Merchants Fire Assurance Corp. v. Lattimore, 263 F.2d 232 (Cir. 9, 1963); Gates v. Gen. Cas. Co., 120 F.2d 925 (Cir. 9, 1941); Frederick v. Federal Life Ins. Co., 13 Cal.App.2d 585, 57 P.2d 235 (1936); Maggini v. West Coast Life, 136 Cal.App. 472, 29 P.2d 263 (1934). As stated in Rutherford v. Prudential Ins. Co., 234 Cal.App.2d 719, 734, 44 Cal.Rptr. 697, 706 (1965):

> "A study of these cases dealing with a knowledge by the insurer of the falsity of a statement shows that whether such knowledge requires an investigation of other answers depends upon the type and seriousness of the known misrepresentation. In our case the misstatements were concerning matters serious enough to require investigation."

See also, Di Pasqua v. California etc. Life Ins. Co., 106 Cal.App.2d 281, 235 P.2d 64 (1951). In the present case the jury could reasonably have found that the misstatements were concerning matters serious enough to require investigation. Defendant claims the case of Fleet Messenger Service v. Life Ins. Co. of No. Amer., 315 F.2d 593 (Cir. 2, 1963) shows that even with knowledge of the false answer it was justified in relying on the application for insurance, the report of its own medical examiner, and the report given by Dr. Whitson. But the *Fleet Messenger Service* case does not add anything to the earlier cited cases. In that case the court found that the known false answer was explained away by the medical report and was seemingly unimportant. In the case at bar there was a heart attack shortly after the application for insurance, and Mr. Reginato's answer as to heart symptoms was vital to the risk of insuring his life.

■ As a general rule an insurance company is charged with knowledge of what appears in its own records. E. A. Boyd Co. v. United States F. & G. Co., 35 Cal.App.2d 171, 94 P.2d 1046 (1939). However, in Schrader v. Prudential Ins. Co. of Amer., 280 F.2d 355 (Cir. 5, 1960), the court held in part that under the particular circumstances of that case it would be unreasonable to hold that the insurer under a life insurance policy had knowledge of a claim made under its group hospitalization program. In that case the evidence showed that the hospitalization claim was made prior to the application for insurance; that it was contrary to company policy to search group hospitalization records in processing applications for individual life insurance, and that the insured knew and expected that no such search would be made. There is no such evidence in the case at bar.

■ The court in *Schrader* suggests that an insurance company should be charged with knowledge of what appears in its own records only if there are facts which draw the company's attention to the records. In the case at bar there is evidence from which the jury could find that the defendant's attention was drawn to the hospitalization records. Mr. Rodgers testified that he knew Mr. Reginato was insured with the defendant's group hospitalization program. Mr. Rodgers testified he knew of the November 5 heart attack shortly after the occurrence. Also he testified that he knew that the expenses of the November 5 heart attack were covered and paid for by the defendant's group hospitalization plan. In short, the evidence in the case at bar does not justify a finding by this Court that *as a matter of law* it would be unreasonable to charge the defendant with knowledge of the Brookside Hospital records.

■ Under California law upon discovery or notification of the misrepresentation the insurer must act within a reasonable time to cancel or rescind the policy. See Farrar v. Policy Holders Life Ins. Ass'n., 3 Cal.App.2d 87, 39 P.2d 229 (1935). Defendant had Mr. Reginato's original release which it could have used to secure the records of Dr.

Whitson. In fact all of the evidence finally introduced by the defendant at trial was available to the defendant at that time. There is no showing that the defendant made any attempt to conduct a real investigation of the facts until after the fatal heart attack of Mr. Reginato some eleven months later. During these eleven months the defendant collected the life insurance premiums as usual. It was in constant contact with Mr. Reginato with regard to his agency business, but made no attempt to ask Mr. Reginato for an explanation of the inconsistencies between the application and the Brookside Hospital records. Defendant knew that Mr. Reginato had a serious heart condition, but it let almost an entire year pass without taking any step toward the rescission or cancellation of Mr. Reginato's policy. Under these circumstances the jury could reasonably have found that the defendant did not act within a reasonable time.

Defendant contends that Mr. Reginato's unsolicited statement at the San Francisco convention in September of 1962, that his November 5 heart attack was not connected with his earlier application for insurance, was the first event which might be said to have put the defendant on notice of possible misrepresentations in the application for insurance. Mr. Reginato died about one month after this statement. Because of this, defendant claims that it did not have a reasonable amount of time within which to act. Defendant's contentions miss the point. As stated earlier there is evidence from which the jury could have found that defendant was put on inquiry ten months before that particular statement. Defendant's actions at the time of this subsequent information tends to emphasize the inference that the defendant was purposely avoiding discovery of these misrepresentations during the lifetime of Mr. Reginato. Consistent with its behavior of the prior ten months defendant went no farther than to check the application for insurance and the report of its medical examiner, Dr. Gadwood. Defendant knew that information concerning the November 5 heart attack lay within its own group hospitalization records, yet even at this time the underwriting department claims it did not check those records.

 The jury also had before it the history of the relationship between Mr. Reginato and the defendant from which it was entitled to draw inferences and make interpretations. This history showed a probable motive for the conduct of the company agents which motive was available to the jury for consideration in determinations of fact. The facts show Mr. Reginato was not an ordinary policy holder, he was a general agent for the defendant; nor was he an ordinary general agent, he had built the defendant's San Francisco representative agency in five years from a small, unprogressive agency to eighth among the defendant's first class agencies. From the testimony of Mr. Diebert the change and growth in the agency was due to the personal activity of Mr. Reginato. The letters of Mr. Maher, the regional director of defendant, after the heart attack show that much was still expected of Mr. Reginato by the defendant. The testimony of Mrs. Karge, Reginato's bookkeeper, shows that even after the heart attack much was still demanded of Mr. Reginato by the defendant. Both Mr. Rodgers and Dr. Anderson, the permanent members of the defendant's underwriting committee, were aware of Mr. Reginato's value to the defendant and his relative standing among the first class agencies of the defendant. This evidence would support a finding by the jury that the defendant with knowledge of facts with which it could void the policy of insurance preferred rather to avoid the consequence of its knowledge than to take the chance of prematurely terminating a Company-Agent relationship which had proven extremely profitable to the defendant.

For these reasons the jury was instructed on the issue of waiver and permitted to consider evidence offered on the subject, and since there is evidence to support the finding of waiver, even though there is uncontradicted evidence of material false answers in the applica-

tion for insurance, the verdict should not be disturbed. It is the opinion of the Court that the verdict of this jury should not be set aside, and that judgment notwithstanding the jury verdict should not be entered for the defendant.

As grounds for its alternative motion for a new trial defendant alleges that there was no evidence to rebut the showing of material false answers in the Reginato application, and that the issue of waiver was raised for the first time at trial, precluding defendant from assembling appropriate proof of lack of knowledge of the requisite facts, and its inability to reasonably learn and act on them prior to Reginato's death.

■ Under California law as stated in Arnold v. American Ins. Co., 148 Cal. 660, 84 P. 182, 25 L.R.A.,N.S., 6 (1906):

"Nor is there anything in the point that the question of waiver or estoppel was not in issue, because plaintiff did not allege a waiver, or facts constituting an estoppel, in her complaint. It is incumbent upon a plaintiff, in an action upon a policy of insurance, to allege the performance of conditions precedent, such as the giving of any required notice of loss, etc., and performance of all promissory warranties, but limitations, stipulations, and conditions which are in the nature of conditions subsequent, and go to defeat the liability of the insurer, are matters of defense, which, to be available to the insurer, must be alleged in the answer, as they were in this case. To this matter so alleged in the answer, under our system of pleading, any defense by way of replication was open to the plaintiff without pleading. (Citations omitted)." 148 Cal. 668, 84 P. 185.

See also, Walker v. Home Indemnity Ins. Co., 145 Cal.App.2d 318, 324–325, 302 P.2d 361 (1956); Phillips v. Reserve Life Ins. Co., 128 Cal.App.2d 540, 545,

275 P.2d 554 (1954). Thus in the case at bar the question of waiver was put in issue by the defendant's affirmative defense claiming the deceased had made material omissions in his application for insurance. However, the thrust of defendant's claim of surprise extends farther than the pleadings, it also is directed to the failure of plaintiff to raise the issue until the time of trial. This matter was fully discussed at the trial, and the Court, in its discretion, denied defendant's motion to strike the issue from the case. While it would have been better practice for plaintiff to have declared the issue in the pre-trial conference and have identified it in the pre-trial order, such failure does not for all time and under every circumstance foreclose plaintiff from raising the issue. The real question is one of substantial justice and the balancing of the conveniences and equities of the parties. In this context and under the circumstances in which the evidence developed the Court concluded that the equities were with the plaintiff. Most of the testimony on waiver came from defense witnesses, and such testimony was received mostly without objection. The claim of surprise did not come until the end of the evidence on concluding defense motions. Both sides offered instructions on the subject of waiver. It was, and is, the Court's impression that the claim of surprise was a maneuver to keep the issue from the jury, not to get time to prepare for further testimony on the subject.

It is the opinion of the Court that the defendant was not unduly surprised by the failure of the plaintiff to specifically plead waiver of the material misrepresentations.

It is therefore ordered that the motions of the defendant, Washington National Insurance Company, for judgment notwithstanding the verdict, and in the alternative for a new trial, be, and the same are hereby denied.